2019 IL App (1st) 190164

FIRST DISTRICT
SIXTH DIVISION
October 11, 2019

No. 1-19-0164

| | | |
|---|---|---|
| FIRST CHICAGO INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| MY PERSONAL TAXI AND LIVERY, INC.; | ) | No. 17 CH 7778 |
| RONALD DIXON; and JUAN RANGEL, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Ronald Dixon, Defendant-Appellant). | ) | Celia Gamrath, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns a declaratory judgment action by plaintiff-appellee First Chicago Insurance Company (First Chicago) against defendant-appellant Ronald Dixon and defendants My Personal Taxi and Livery Service, Inc. (Livery Service), and Juan Rangel. First Chicago sought declarations that (1) First Chicago's insurance coverage of Livery Service did not encompass injuries to Livery Service passenger Dixon allegedly caused by the negligence of Rangel, Livery Service's agent, in assisting or escorting Dixon to a hospital entrance so that (2) First Chicago had no duty to defend Livery Service or Rangel regarding Dixon's claims. Upon cross-motions for summary judgment by First Chicago and Dixon, the court granted summary judgment for First Chicago. Dixon appeals, contending that the court erred in denying him summary judgment and granting summary judgment for First Chicago. For the reasons

stated below, we reverse the judgment of the circuit court and enter judgment in favor of Dixon upon his summary judgment motion.

¶ 2                                    I. JURISDICTION

¶ 3     Upon cross-motions by First Chicago and Dixon, having entered defaults against Livery Service and Rangel, the court granted summary judgment for First Chicago on January 4, 2019. Dixon filed his notice of appeal on January 22, 2019. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017).

¶ 4                                    II. BACKGROUND

¶ 5     Dixon brought a personal injury action (lawsuit) against Livery Service, circuit court No. 16-L-66042, in June 2016 and later amended it to add Rangel as a defendant. Dixon alleged that Livery Service provided nonemergency medical transportation to the public, including disabled persons. Livery Service, through its agent Rangel, transported Dixon, who is legally blind, from his home to a medical appointment at a Department of Veteran Affairs (VA) hospital on February 9, 2016. As Rangel escorted or assisted Dixon to the hospital entrance, Rangel allegedly caused Dixon to walk into a cement pillar. Dixon alleged that Livery Service and Rangel owed him a duty of ordinary care in transporting and escorting him and then breached that duty so that Dixon was injured as a proximate result.

¶ 6     First Chicago brought its declaratory judgment action (declaratory action) against Dixon, Livery Service, and Rangel in June 2017 and amended it thereafter. Livery Service had a business automobile insurance policy (policy) from First Chicago in effect on February 9, 2016, and a copy of the policy was attached to the complaint. First Chicago noted that Dixon's lawsuit alleged that he was injured by an agent of Livery Service who was assisting or escorting him to a hospital entrance while transporting Dixon to a medical appointment. First Chicago argued that

Dixon's alleged injuries were not caused by an accident "resulting from the ownership, maintenance or use of a covered 'auto' " as provided in the policy. First Chicago thus sought a judgment that it was not obligated to defend Livery Service or Rangel regarding Dixon's claims against Livery Service and Rangel.

¶ 7    Dixon appeared and answered in the declaratory action. Dixon admitted that Livery Service had the policy from First Chicago and that Dixon made the relevant allegations in his lawsuit. Dixon denied that his alleged injuries were not caused by an accident "resulting from the ownership, maintenance or use of a covered 'auto' " as provided in the policy and denied that First Chicago had no duty to defend Livery Service and Rangel.

¶ 8    With Livery Service and Rangel having been served with summons but not having appeared and First Chicago having filed motions for default against Livery Service and Rangel, the court found Livery Service and Rangel in default in the declaratory action in June 2018.

¶ 9    First Chicago filed its summary judgment motion in July 2018. First Chicago did not dispute that Rangel drove Dixon to a medical appointment on February 9, 2016, in a vehicle owned by Livery Service and leased to Rangel. Attached to the motion in support of the aforesaid were the depositions of Dixon and Livery Service co-owner Deidre Pinnick. First Chicago did not dispute that Dixon was blind and that Rangel escorted him to the hospital entrance, and First Chicago noted Dixon's deposition testimony that Rangel "slung" Dixon into a pole while escorting him. First Chicago argued that the policy covered injuries "resulting from the ownership, maintenance or use of a covered auto" but the insured vehicle was not being operated at the time of the alleged injury, nor was either Dixon or Rangel inside the vehicle at that time. First Chicago argued that various cases interpreting similar insurance policy language required a causal relationship between the injury and ownership, maintenance, or use of the vehicle for the policy to cover the injury. It argued that Dixon's alleged injury by Rangel did not

arise during use of the Livery Service vehicle because Rangel "had already transported Mr. Dixon to his destination and Mr. Dixon had already exited the taxicab before the alleged injury occurred." In other words, the relationship between Dixon's alleged injury and use of the insured vehicle was "merely incidental" and "too remote." First Chicago argued that the "policy insures the risk of taxicab accidents and not all accidents to which the taxicab can be tied" and that holding otherwise "would unduly and improperly equate any potential liability [of Livery Service and Rangel] with the coverage afforded under the policy."

¶ 10    Dixon replied to First Chicago's summary judgment motion, arguing that Livery Service transported veterans, including blind veterans, to medical appointments at a VA hospital pursuant to an agreement with the VA providing in relevant part that blind veterans were to be met at their door and escorted to the livery vehicle and then escorted from the vehicle into the VA facility. A copy of said agreement was attached, and Dixon pointed to similar deposition testimony by Pinnick. Dixon noted that the policy was a business auto policy covering multiple Livery Service vehicles and multiple named Livery Service drivers including Rangel, and that the policy did not define a "user." Dixon argued that the policy expressly excluded damages from handling property to or from an insured vehicle but did not similarly exclude damages from escorting passengers to or from an insured vehicle. He also argued that the policy did not exclude loading or unloading from use as Livery Service's nonautomobile policy provided.

¶ 11    Dixon argued that the cases cited in First Chicago's motion were distinguishable, except for a 1942 case concerning the allegedly negligent carriage of ice from an ice truck. He argued that other caselaw, including *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391 (2010), interpreted similar insurance policies so that "user" includes the passengers of vehicles as well as drivers and "use" means employing a vehicle for some purpose of a user. Thus, using a vehicle is broader than operating it and encompasses loading and unloading personal property from a

vehicle. Dixon argued that he was a user of the insured Livery Service vehicle, using it to reach his VA appointment, which included being escorted into the VA facility. Dixon also argued that the policy's term "use" was ambiguous and should be construed strictly against First Chicago and liberally in Dixon's favor.

¶ 12 Dixon filed his cross-motion for summary judgment in August 2018, incorporating by reference all arguments and evidence from his response to First Chicago's motion.

¶ 13 First Chicago replied in support of its motion and responded to Dixon's motion, arguing that the cases cited by Dixon concerning "use" are distinguishable.

¶ 14 Dixon replied in support of his motion and against First Chicago's motion, arguing that the caselaw he cited, including *Schultz*, was controlling.

¶ 15 On January 4, 2019, the court granted First Chicago's summary judgment motion and denied Dixon's summary judgment motion. The court noted that it was considering cross-motions for summary judgment and that Livery Service and Rangel "have not participated in this action." The court compared the allegations of Dixon's lawsuit as amended to the policy and concluded that "even a liberal construction of the *** policy does not support a duty to defend" Livery Service or Rangel. The court acknowledged Dixon's caselaw that use of an insured vehicle includes more than operation and encompasses passengers but found that there must be a rational connection of the vehicle to the alleged use and concluded that Dixon's use of the Livery Service vehicle ended when he exited the vehicle. "To find coverage for an accident that occurred after the auto was no longer being utilized would expand coverage under the business auto policy exponentially and transform it into a comprehensive commercial general liability policy, beyond the contemplation of the parties." The court noted that there was "no indication First Chicago had any knowledge of" the agreement between the VA and Livery Service and found that it was the "intent of the parties to the insurance contract—not the contract with the

VA—that is relevant to this coverage analysis." In other words, "Rangel's walking Dixon to the entrance of [the VA hospital] was a distinct and independent act incidental from the use of the auto and not a risk for which the parties contemplated coverage under the" policy. This appeal timely followed.

¶ 16                                        III. ANALYSIS

¶ 17    On appeal, Dixon contends that the trial court erred in denying him summary judgment and granting summary judgment for First Chicago. He notes the VA contract with Livery Service and that the policy was not a general automobile policy but a business policy specifically for livery vehicles and argues that the policy covers transporting a livery passenger such as Dixon to the final place of delivery or destination, here the VA hospital entrance.

¶ 18    Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and the moving party is clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). Both plaintiffs and defendants may file for summary judgment. *Id.* § 2-1005(a), (b). When parties file cross-motions for summary judgment, they agree that there is no genuine issue of material fact and that the case may be resolved as a matter of law. *Oswald v. Hamer*, 2018 IL 122203, ¶ 9. Our review of a grant of summary judgment is *de novo*. *Id.*

¶ 19    Construction of the terms of an insurance policy is a question of law properly decided on a motion for summary judgment. *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 15. An insurance policy is a contract, interpreted according to the rules of contract interpretation, and the courts must ascertain and give effect to the intention of the parties as expressed in the policy language. *Id.* ¶ 17. The clear and unambiguous terms of an insurance policy must be enforced as written unless doing so would violate public policy. *Id.*

¶ 20    An insurer has a duty to defend its insured when the underlying complaint against the insured alleges facts that fall within, or potentially within, the policy coverage. *Acuity Insurance Co. v. 950 West Huron Condominium Ass'n*, 2019 IL App (1st) 180743, ¶ 24. To determine if a loss is covered under a policy, a court must compare the allegations in the underlying complaint to the policy language, liberally construing both in favor of the insured while giving the policy language its plain and ordinary meaning. *Id.*; *Illinois Municipal League Risk Management Ass'n v. City of Collinsville*, 2018 IL App (4th) 170015, ¶ 30.

¶ 21    In a case involving the construction of a motor vehicle liability insurance policy and the statutes governing such policies, our supreme court has stated that "the use of an automobile has been held to denote its employment for some purpose of the user," noting that using a vehicle is broader than operating one. *Schultz*, 237 Ill. 2d at 401. "One uses an automobile whenever such use 'is rationally connected to the vehicle for the purpose of providing transportation or satisfying some other related need of the user.' " *Id.* at 401-02 (quoting *Jaquez v. National Continental Insurance Co.*, 835 A.2d 309, 315 (N.J. 2003)). "[F]or purposes of motor vehicle insurance policies, 'use' is not limited to operating or driving a motor vehicle. It also includes riding in one as a passenger." *Id.* at 402. While our supreme court refrained from addressing the point as it did not need to in resolving the case before it, it noted that

"[s]ome courts have concluded that one can be 'using' a motor vehicle even when one is not occupying it as either a driver or passenger at the time the injury is sustained. [Citation.] It has been held, for example, that one is 'using' a vehicle, for purposes of insurance coverage, when loading personal belongings into it or unloading personal belongings from it." *Id.* at 402 n.3 (citing *Travelers Insurance Co. v. Aetna Casualty & Surety Co.*, 491 S.W.2d 363, 365 (Tenn. 1973)).

¶ 22    Following *Schultz*, this court has stated that "we reject any argument that Illinois law equates 'use' of the vehicle with only operating or driving, as 'use' has a broader definition." *Menard, Inc. v. Country Preferred Insurance Co.*, 2013 IL App (3d) 120340, ¶ 21. To find coverage under an insurance policy, there must be some causal connection between the injury and the use of the vehicle, though strict proximate causation is not required. *Id.* ¶ 28. This court applies a reasonable contemplation test, finding coverage when an injury results from an activity that presented the type of risk that the parties reasonably contemplated would be covered by the policy. *Id.* This court must determine whether the alleged negligent act that caused the alleged injury was a reasonable incident or consequence of the use of the insured vehicle. *Id.*

¶ 23    Here, Livery Service's policy from First Chicago covers an accident "resulting from the *** use of a covered 'auto.' " We see no reason not to follow the aforesaid caselaw that use of a vehicle is broader than operation for purposes of a vehicular insurance policy. First Chicago offers various reasons for distinguishing these cases from the instant case, including that the circumstances in *Schultz* were not the same as the instant case. However, that does not alter a matter we consider key: the proposition that use is broader than operation is (1) eminently logical according to the plain and ordinary meaning of both words, as explained by the *Schultz* court, and (2) highlights that First Chicago could have, but did not, use "operation" or other clearly narrower language in place of "use" in the relevant and above-quoted policy provision. Well before *Schultz*, this court reversed summary judgment for an insurer and found that coverage for injuries "[a]rising out of the *ownership, maintenance or use* of the owned automobile" includes "*use* of the automobile in transporting and/or dropping off the children and her leaving of [a child] in the car for a moment" because doing so was " 'reasonably consistent with the inherent nature of the vehicle ***' and, therefore, within the meaning of the term 'use' in the policy." (Emphases in original and internal quotation marks omitted.) *Constitutional Casualty Co. v.*

*Soder*, 281 Ill. App. 3d 657, 660-61 (1996) (quoting *Tasker v. Larson*, 439 N.W.2d 159, 161 (Wis. Ct. App. 1989)). Thus, the broad meaning of the term "use" should have been firmly in the contemplation of First Chicago in drafting the policy at issue.

¶ 24    Notably, the policy at issue does not expressly exclude from coverage injuries arising from the "loading" or "unloading" of passengers, though First Chicago insured Livery Service's vehicles knowing that Livery Service and its agents would use those vehicles for livery service; that is to transport people from their starting points to their destinations for hire. The policy does exclude bodily injury and property damage "resulting from the handling of property [b]efore it is moved from the place where it is accepted by the 'insured' for movement into or onto the covered 'auto'; or [a]fter it is moved from the covered 'auto' to the place where it is finally delivered by the 'insured.' " We reach two conclusions from this exclusion. First and foremost, First Chicago was aware in drafting this policy of how to draft an exclusion for loading and unloading but did not expressly exclude the "loading" or "unloading" of passengers.

¶ 25    Secondly, since the property loading and unloading exclusion only excludes injuries and damage before Livery Service accepts property and after Livery Service delivers it, First Chicago's policy language does not exclude injuries or damage arising after Livery Service accepted property and before Livery Service delivered it even if that acceptance or delivery was outside the insured vehicle. Thus, the policy does not limit coverage of use of an insured vehicle to operation of the vehicle nor exclude coverage for injuries or damage occurring outside the vehicle. In *Travelers Insurance Co.*, as noted by our supreme court in *Schultz*, the supreme court of Tennessee concluded that use of an insured vehicle includes loading and unloading unless the policy expressly provides otherwise. *Travelers Insurance Co.*, 491 S.W.2d at 365. It also noted that, similar to the property loading and unloading exclusion in this policy, "the entire process involved in moving the goods is covered" "[i]n commercial situations *** from the moment the

insured takes possession until delivered at the point of destination." *Id.* While our supreme court stated that it need not reach the issue of loading and unloading in *Schultz*, we do, and we agree with the *Travelers Insurance* court.

¶ 26    This opinion addresses only whether First Chicago has a duty to defend in the underlying lawsuit; the issue of indemnification is premature because the underlying lawsuit has not been decided. That said, we do not consider it remote to the livery driver-passenger relationship that a driver who just drove a passenger to the vicinity of his destination would assist a passenger who needs assistance—whether blind, disabled, or merely overladen with luggage—the remainder of the way to his destination. We do not consider such assistance as occurring "after that work has been completed or abandoned" where the work of a livery driver is transporting a passenger door-to-door. Stated another way, assisting a passenger the last few steps from the livery vehicle to the destination itself is rationally connected to, and a reasonable consequence of, the livery driver and passenger using the livery vehicle to take the passenger most of the way there.

¶ 27    None of the aforesaid can be said about a driver stabbing his passenger either inside (*State Farm Mutual Automobile Insurance Co. v. Pfiel*, 304 Ill. App. 3d 831 (1999)) or outside (*United States Fidelity & Guaranty Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533 (1994)) an insured vehicle as in cases cited by First Chicago. Citing *Schultz* for the proposition that use of a vehicle is broader than operation of a vehicle for insurance purposes, this court has stated that "in *State Farm Mutual* \*\*\*, the vehicle[ ] involved merely provided the site where criminal activity occurred and thus the court held that the injuries did not arise out of the operation, maintenance or use of the insured vehicle." *Kim v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131235, ¶ 21. First Chicago also cites other cases decided before *Schultz*, including a 1942 opinion. Having found *Schultz* to be at least persuasive, we reach the same conclusion we did in *Kim*: "The facts of these cases are distinguishable from the case at bar." *Id.*

¶ 28　The policy excludes bodily injury or property damage "arising out of your work after that work has been completed or abandoned," where "your work" includes "[w]ork or operations performed by you or on your behalf." For this exclusion, work is "deemed completed at the earliest of *** [w]hen all of the work called for in your contract has been completed." In this case, Livery Service's agreement with the VA called for assisting passengers like Dixon to the hospital entrance, so that it is at least arguable that Livery Service's work was not complete regarding Dixon until Rangel did so. Moreover, it is reasonable to contemplate that a livery driver would assist such a passenger as part of completing transportation of the passenger in the insured livery vehicle whether or not the driver was legally or contractually obligated to do so.

¶ 29　Lastly, we reject First Chicago's contention that there is no causal connection between the insured Livery Service vehicle Rangel operated and Dixon's injury. Dixon would not have been assisted or escorted to the hospital entrance by Rangel when he was allegedly injured due to Rangel's negligence had Dixon not been using Livery Service's vehicle insured by First Chicago to go to the hospital. Stated another way, Rangel would not have allegedly injured Dixon had Rangel not been using the insured vehicle to take Dixon to the hospital for hire. Dixon was not being assisted to the hospital entrance by a random person nor was Rangel assisting a random person to the hospital entrance, but Rangel and Dixon were completing the action of using the insured vehicle to take Dixon to the hospital for hire.

¶ 30　　　　　　　　　　　　　　IV. CONCLUSION

¶ 31　Accordingly, we reverse the judgment of the circuit court and enter judgment for Dixon upon his summary judgment motion, only in that First Chicago has a duty to defend Livery Service and Rangel regarding Dixon's claims in case No. 16-L-66042 arising from the incident of February 9, 2016.

¶ 32　Reversed.

- 11 -

**No. 1-19-0164**

| | |
|---|---|
| **Cite as:** | *First Chicago Insurance Co. v. My Personal Taxi and Livery, Inc.*, 2019 IL App (1st) 190164 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-7778; the Hon. Celia Gamrath, Judge, presiding. |
| **Attorneys for Appellant:** | James P. Costello, Ronald J. Dixon, and Michael E. Crane, of Costello, McMahon, Burke & Murphy, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Cynthia Ramirez, of Leahy, Eisenberg & Fraenkel, Ltd., of Chicago, for appellee. |