2021 IL App (1st) 201022-U

FIFTH DIVISION
October 15, 2021

No. 1-20-1022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| STANISLAW RUTKOWSKI, | ) | Appeal from the |
| | ) | Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2012 CH 10606 |
| | ) | |
| FIDELITY NATIONAL TITLE INSURANCE | ) | Honorable Franklin U. Valderrama, |
| COMPANY, | ) | Judge, Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court erred when it granted defendant's motion for summary judgment because there are questions of fact as to whether plaintiff's claim was covered under the title insurance policy; reversed and remanded.

¶ 2    Plaintiff, Stanislaw Rutkowski, appeals from the circuit court's decision that granted summary judgment in favor of defendant, Fidelity National Title Insurance Company, on plaintiff's Third Amended Complaint. On appeal, plaintiff asserts that summary judgment in defendant's favor was improper because there were genuine issues of material fact regarding whether plaintiff made a valid claim under the title insurance policy at issue and whether

defendant breached its obligation to indemnify plaintiff under the terms of the policy. We reverse the circuit court's order that granted summary judgment to defendant.

¶ 3                                    I. BACKGROUND

¶ 4        This case is based on a breach of contract action related to a title insurance policy that plaintiff purchased in 2005. The common law record shows that on September 30, 2005, plaintiff, as beneficiary of Trust No. 1-6592 of Palos Bank & Trust Company (Trust) entered into a contract with Northstar Trust Company, Inc. (Northstar) to purchase property at 2621 through 2649 South Muskegon Avenue in Burnham, Illinois (property). Before plaintiff closed on the property, the Lawyers Title Insurance Corporation (Lawyers) issued an Owner's Policy of Title Insurance (policy) for the Property with the Trust named as the insured. The policy provided that Law Title Insurance Agency, Inc.-Chicago (Law Title) issued the policy, and that Law Title was the authorized agent for Lawyers. In June 2010, Lawyers merged into defendant, Fidelity National Title Insurance Company, and defendant became a successor in interest to Lawyers.

¶ 5        The policy stated in part as follows. Subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B and the conditions and stipulations,

> "[Lawyers], insures, as of Date of Policy shown in Schedule A[1], against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reasons of:
>
> 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
>
> 2. Any defect in or lien or encumbrance on the title;

---

[1] The policy contained in the common law record includes a "Schedule A" attached to the policy. However, under the "Date of Policy" section in Schedule A, there is no date listed. The parties do not dispute that the Date of the Policy was the date of the closing of the property, which was September 30, 2005.

3. Unmarketability of the title;

4. Lack of a right of access to and from the land."

Under Section 3(d) of the Exclusions from Coverage section, the policy states: "Defects, liens encumbrances, adverse claims or other matters *** attaching or created subsequent to Date of Policy" are expressly excluded from the coverage of the policy. Under the Conditions and Stipulations, the policy provides under Condition 9(a) as follows:

"If the Company establishes the title, or removes the alleged defect, lien or encumbrance, ***in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby."

¶ 6 The common law record shows that before closing in September 2005, plaintiff learned that there were municipal tax liens on the property held by the Village of Burnham for special assessments from 1984 and 1985 in the amount of $92,244.83.[2] Thereafter, before plaintiff closed on the property, he purchased the policy. After the closing date, Law Title did not pay the municipal lien assessments and contested them in court. In January 2007, the court in that case concluded that the lien assessments were valid at the time of closing. On September 17, 2007, Law Title issued a check to the Village of Burnham in the amount of $97,000.

¶ 7 Underlying Litigation - Case No. 06 L 012760

¶ 8 The common law record shows that in 2006, plaintiff, as beneficiary of the Trust, filed a complaint against Law Title and Northstar in the circuit court of Cook County (Case No. 06 L 012760) (underlying litigation) and alleged claims for breach of contract as follows. On August

---

[2] The facts regarding the status of the liens on the property were included in plaintiff's response to defendant's motion to dismiss the First Amended Complaint and in plaintiff's response to defendant's motion to reconsider the court's June 14, 2019, order.

24, 2005, plaintiff and Northstar entered into a real estate contract for the property. On September 30, 2005, Law Title sold plaintiff the title insurance policy related to the property. The title insurance policy insured plaintiff against any exceptions recorded on title of the property, including insurance for known special assessments recorded against the property owed to the Village of Burnham, and the policy insured that plaintiff would receive a clear title at the closing. On September 30, 2005, the date of closing, Law Title and Northstar did not covey plaintiff clear title to the property. From the date of closing and for more than two years thereafter until September 2007, Law Title and Northstar failed to clear title to the property, and plaintiff was denied the use, ownership, and title to the property. Northstar and Law Title intentionally held the cloud on title and failed to pay the assessments and denied plaintiff his use, enjoyment, and rightful ownership of the property.

¶ 9    The common law record contains an order entered by the circuit court in that action on June 24, 2011. The order stated that the case was before the court on prove-up of damages on a default judgment that had been entered and that, after having heard the evidence, judgment was entered in favor of plaintiff and against Law Title and Northstar in the amount of $1,622,851.70 (judgment).

¶ 10                    Plaintiff's Third Amended Complaint

¶ 11    In March 2012, plaintiff filed his original complaint against defendant in this action. He asserted that defendant, who was successor in interest to Lawyers, had an obligation to indemnify plaintiff for the Judgment. Thereafter, the parties engaged in several years of motion practice. In April 2016, plaintiff filed his third amended complaint, which asserted a claim for breach of title insurance contract that alleged as follows. On September 30, 2005, at the closing of the property, defendant, as successor in interest to Lawyers, issued the policy to plaintiff to warrant

that the property was free and clear from any title exceptions and to insure against exceptions recorded on the title, including special assessments owed to the Village of Burnham. In December 2011, plaintiff made a claim to defendant under the policy for damages he sustained from title exceptions and lien encumbrances that prevented him from having clear and unfettered ownership of his property. Plaintiff complied with all contractual obligations under the policy by paying the title policy amount and making a valid claim for policy proceeds. Defendant breached the policy when it denied plaintiff's claim and failed to pay the title insurance proceeds in the amount of $275,000 when plaintiff made valid claims for damages for cloud on the title to the property that the policy was paid to insure against. Plaintiff attached the policy to his complaint.

¶ 12                    Defendant's Motion for Summary Judgment

¶ 13      In September 2017, defendant filed a motion for summary judgment, asserting that there was no genuine issue of material fact that plaintiff could not prove his breach of contract claim. Defendant contended that plaintiff did not perform his obligations under the policy. Defendant stated that in December 2011, plaintiff's counsel sent a letter to defendant demanding that defendant satisfy the judgment. That letter, which was attached to the motion, stated: "Please find enclosed judgment order entered in the amount of $1,622,851.70 arising out of breach of title insurance agreement and indemnity under insurance coverage" for the policy and, "Please forward payment on the judgment obtained to avoid further litigation for collection of these amounts." Defendant asserted that when it attempted to process plaintiff's demand, plaintiff repeatedly failed to provide the requested supporting documentation, and as a result, it denied plaintiff's claim in April 2012.

¶ 14      Defendant also contended it was entitled to summary judgment because the policy did not cover plaintiff's claim. Defendant asserted that the undisputed facts showed that at the

September 2005 closing on the property, plaintiff learned that certain tax liens had been recorded against the property to secure repayment of special assessments levied by the Village of Burnham in 1984 and 1985 and that on September 17, 2007, Law Title issued a check to the Village of Burnham to release the liens. Defendant cited condition 9 of the policy, which stated, "If the Company establishes the title, or removes the alleged defect, lien or encumbrance *** it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby." Defendant argued that under Condition 9, because Law Title discharged the tax liens in 2007, defendant had no obligation under the policy when it received plaintiff's claim. Defendant also argued that the policy did not allow recovery of consequential damages from liens.

¶ 15    Defendant further contended that plaintiff's claim was excluded by Section 3(d) of the policy, which stated that "[d]efects, liens, encumbrances, adverse claims or other matters *** attaching or created subsequent to Date of Policy" were expressly excluded from coverage. Defendant argued that the judgment in the underlying litigation was not entered until June 24, 2011, which was nearly six years after the policy was issued on September 30, 2005, and that because the judgment did not exist at the time the policy was issued, payment of the judgment was excluded under Section 3(d) of the policy.

¶ 16              Plaintiff's Response to Motion for Summary Judgment

¶ 17    In response, plaintiff asserted that the evidence showed that defendant purchased the assets and liabilities of the insurance policy at issue. Plaintiff argued that there were genuine issues of material fact regarding whether defendant breached the terms of the policy when it denied his claim and whether plaintiff performed his obligations under the policy. Plaintiff argued that the exclusions noted by defendant did not apply because they only applied to restrictions,

encumbrances, liens, adverse matters, defects or other matters that attached to the property after the policy was executed. He asserted that the tax lien assessments were from 1984 and 1985 and were validly recorded on the property for more than 20 years before the closing. Plaintiff argued that once it was determined that the cloud on the title caused him damages, he filed his claim for title insurance policy proceeds and forwarded the judgment to defendant as proof of his damages.

¶ 18                    Defendant's Reply in Support of Summary Judgment

¶ 19        In reply, defendant asserted that plaintiff failed to perform his duties under the policy. Defendant continued to argue that plaintiff's claimed losses and the judgment were specifically excluded from coverage under section 3(d) of the "Exclusions from Coverage" section of the policy. Defendant asserted that plaintiff did not dispute that the tax liens were paid and discharged by Law Title in 2007 and that therefore all of defendant's duties and obligations under the policy were discharged at that time under Condition 9 of the policy.

¶ 20                    Circuit Court's March 2018 Order

¶ 21        In March 2018, the circuit court granted defendant's motion for summary judgment. In a written order, the court concluded that plaintiff failed to present evidence that he complied with his contractual obligations under the policy to establish a genuine issue of material fact regarding his performance. The court noted that the policy required plaintiff to submit the requisite information for his claim for loss or damage, but plaintiff failed to provide the information despite defendant's repeated attempts to obtain it. The court declined to address defendant's second argument regarding whether the claim was covered under the policy.

¶ 22                    Motion to Reconsider the Circuit Court's March 2018 Order

¶ 23        Plaintiff filed a motion to reconsider, contending that the issue of whether plaintiff supplied sufficient information to defendant to support his title insurance claim was a disputed and

material fact. Thereafter, the court granted plaintiff's motion to reconsider and in its written ruling, it stated that under the policy, plaintiff's failure to comply did not automatically result in a denial of coverage, as defendant's obligation terminated only if it was prejudiced by plaintiff's failure to provide the required proof of loss or damages for the claim. The court concluded that defendant did not present any evidence to establish how it was prejudiced by plaintiff's failure to provide the requested information, noting that the deposition testimony showed that the claim evaluation process allowed defendant to obtain the necessary information from Law Title. The court vacated its ruling that granted summary judgment to defendant and took under advisement defendant's argument that plaintiff's claim was not covered under the policy.

¶ 24          Circuit Court's Denial of Defendant's Motion for Summary Judgment

¶ 25     On June 14, 2019, the court denied defendant's motion for summary judgment. In a written order, the court stated that defendant was seeking to challenge the judgment entered in the underlying litigation, which was an improper collateral attack. The court stated that defendant had argued that it satisfied its obligations before plaintiff made his demand because Law Title issued a check to the Village of Burnham in September 2007 and discharged the tax liens at that time. The court concluded that whether Law Title discharged its liability for loss or damage by paying the liens in September 2007 was a defense that may have been available to Law Title in the underlying litigation but could not be a defense in this case.

¶ 26                    Defendant's Motion to Reconsider

¶ 27     Defendant filed a motion to reconsider, asserting that neither defendant nor Lawyers was a party to the underlying litigation and the judgment was entered against Law Title, which was not the same entity as Lawyers. It asserted that Law Title sold plaintiff the policy and Lawyers underwrote the policy, after which defendant succeeded to Lawyers' obligations. Defendant

asserted that because it was not a party to the underlying litigation, it was not bound by the judgment. Defendant asserted that the court erred when it found that defendant's arguments in its motion for summary judgment were collateral attacks and, in doing so, it wrongfully limited defendant's right to defend this action. Defendant further stated that plaintiff's claim was excluded under Section 3(d) of the Exclusions from Coverage section contained in the policy, which excluded any matter "attaching or created subsequent to the Date of the Policy." Plaintiff's claim was a demand for payment of the judgment entered on June 24, 2011, which was nearly six years after the policy's date—September 30, 2005. Defendant also continued to argue that Condition 9 contained in the policy barred recovery because it was undisputed that the title defect that affected plaintiff's property interest was resolved in 2007.

¶ 28    In response, plaintiff asserted that it was indisputable that the tax liens were recorded on the property more than 20 years before the date of the policy and defendant knew about the liens. He asserted that Law Title delayed paying the tax liens for two years and that judgment was entered against Law Title in the underlying litigation for its conduct. He asserted that the case against defendant was not ripe until after it obtained the judgment against Law Title in 2011 and that he proved through that judgment that he suffered damages, at which point he made a claim under the policy for title insurance proceeds. Plaintiff asserted that there was an issue of fact as to whether plaintiff provided adequate proof of damages to support his claim under the policy.

¶ 29    In reply, defendant asserted that plaintiff's claim was based solely upon the judgment and that in plaintiff's response, he raised a new theory that the damages underlying the judgment were covered under the policy. Defendant asserted that even if the court accepted plaintiff's new argument, the damages underlying the judgment would be excluded from coverage because the policy did not cover consequential damages and the damages were not a cloud on the title.

Defendant asserted that the judgment was never a lien against the property nor a threat to plaintiff's ownership of the property.

¶ 30    On November 14, 2019, the court issued an order that stated that it erred in finding that defendant's motion for summary judgment was a collateral attack. The court took under advisement all other matters raised in defendant's motion for summary judgment.

¶ 31                    Circuit Court's Grant of Motion for Summary Judgment

¶ 32    On February 14, 2020, the court granted defendant's motion for summary judgment. In its written ruling, it stated that defendant met its burden of establishing that plaintiff's claim was not covered under the policy and there were no genuine issues of material fact that the judgment in the underlying litigation fell outside the scope of the policy.

¶ 33                    Plaintiff's Motion to Reconsider

¶ 34    Thereafter, plaintiff filed a motion to reconsider, arguing that the Village of Burnham's tax liens from 1984 and 1985 were clouds on the title that caused damages to plaintiff, and which existed and were recorded on the property on the date of the closing. He asserted there were genuine issues of material fact regarding what damages from the judgment in the underlying litigation were covered under the policy.

¶ 35    In response, defendant argued that as successor in interest to Lawyers, it must honor the terms of the policy, but it was not required to pay the judgment as a judgment debtor. Defendant asserted that the default judgment obtained by plaintiff against a third party was not considered a title defect because it did not affect plaintiff's interest in the title. Defendant asserted that even if the judgment could have been considered a title defect, under the clear and unambiguous language of Section 3(d) of the policy, the judgment that comprised plaintiff's claim was time-barred because it arose after the date of the policy.

¶ 36    In reply, plaintiff asserted that the court in the underlying litigation determined that plaintiff sustained damages as a direct and proximate result of the cloud on the title caused by the tax liens that Law Title did not remove for more than two years after the date of the closing. He asserted that he suffered damages as a result of a defect, lien, and encumbrance that was on the title to his property, that the damages were supported by the judgment, and that there was a genuine issue of material fact regarding whether plaintiff's damages and losses were covered under the policy.

¶ 37    The court denied plaintiff's motion to reconsider, stating in a written order that plaintiff failed to meet its burden of establishing that the court erred in its prior ruling. This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39    On appeal, plaintiff argues that there were genuine issues of material fact as to whether plaintiff made a valid claim under the policy and whether defendant breached its obligation to indemnify plaintiff. Plaintiff asserts that the municipal tax liens that caused a cloud on plaintiff's title were recorded in 1984 and 1985 and they were known and recorded on the property before the date defendant was bound by the policy. Plaintiff asserts that after he purchased the policy, Law Title failed to pay the liens to clear title to the property and instead filed an action to challenge their validity, causing the cloud on the title to remain for more than two years. He argues that as a result of the cloud on the title, he sustained damages that he was insured against under the policy because they were incurred by reason of "any defect in or lien encumbrance on the title." Plaintiff argues that the judgment against Law Title proved he sustained significant damages due to the cloud on the title that the policy was supposed to insure and that he won the default judgment against Law Title for its failure to clear title to his Property in a timely manner.

-11-

¶ 40       A circuit court may properly grant summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). To determine whether a genuine issue of material fact exists, we construe these materials strictly against the moving party and liberally in favor of the opponent. *Carney v. Union Pacific R.R.*, 2016 IL 118984, ¶ 25. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Our review of a circuit court's decision to grant summary judgment is *de novo*. *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 16. "[W]e afford no deference to the trial court's decision and instead, we consider anew the pleadings, affidavits, depositions, admissions, and exhibits on file to determine whether the trial court's decision was correct." *Jackson v. Graham*, 323 Ill. App. 3d 766, 779 (2001).

¶ 41       The "[c]onstruction of the terms of an insurance policy is a question of law properly decided on a motion for summary judgment." *First Chicago Insurance Co. v. My Personal Taxi & Livery, Inc.*, 2019 IL App (1st) 190164, ¶ 19. "An insurance policy is a contract, interpreted according to the rules of contract interpretation, and the courts must ascertain and give effect to the intention of the parties as expressed in the policy language." *Id.* "If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement they made." *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 21. However, if "the policy language is ambiguous, it will be construed liberally in favor of coverage." *Markel International Insurance Co. v. Montgomery*, 2020 IL App (1st) 191175, ¶ 37. Further, the " 'purpose of title insurance is

to protect a transferee of real estate from the possibilities of loss through defects that may cloud title.' " *Wade v. Stewart Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 79 (quoting *First National Bank of Northbrook, N.A. v. Stewart Title Guaranty Co.*, 279 Ill. App. 3d 188, 192 (1996)). A "title insurance policy insures the title against defects, which may damage the insured's interest in the property." *Id.*

¶ 42    "To establish a breach of contract claim, a plaintiff must prove the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and damages or injury to the plaintiff resulting from the breach." *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 13. Although a plaintiff is not required to prove his case at the summary judgment proceeding, he must present some evidentiary facts to support each element of the cause of action. *Connaghan v. Caplice*, 325 Ill. App. 3d 245, 248 (2001).

¶ 43    Applying these standards, defendant's right to judgment is not clear and free from doubt. There are questions of fact regarding whether defendant breached the terms of the policy when it denied plaintiff's claim.

¶ 44    Initially, we note that there is no dispute that defendant is a successor in interest to Lawyers. Defendant acknowledges that Lawyers merged into defendant in 2010, that it is a successor in interest to Lawyers, and that as a successor in interest to Lawyers, it must honor the terms of the title insurance policies issued by Lawyers. Further, the record contains the deposition of Marjorie Nemzura, the vice-president of defendant, who testified that defendant purchased the policy and assumed the liabilities therein as part of a larger stock purchase agreement with Lawyers. In addition, the policy was signed by the president of Lawyers and the

first page states that the policy was "issued by" Lawyers. Defendant, as successor in interest to Lawyers, was bound by the policy.

¶ 45       However, we find that there are questions of fact regarding the relationship between Law Title, Lawyers, and defendant as it relates to the policy and the judgment in the underlying litigation. Defendant asserts that the judgment in the underlying litigation was entered against a third party, Law Title, and that neither Lawyers nor defendant was named in the underlying litigation. However, the policy shows that Law Title was the authorized agent for Lawyers. The policy states that it was "[i]ssued by" Law Title as "Authorized Agent" and that Law Title issued the Policy as an authorized agent for Lawyers. We note that "[a]n agent obviously acts on behalf of its principal when issuing a title commitment or policy." *Midfirst Bank v. Abney*, 365 Ill. App. 3d 636, 652 (2006). From our review of the record, there are questions of fact regarding Law Title's relationship with Lawyers as it relates to the policy and the judgment in the underlying litigation. Thus, there are also questions of fact as to defendant's relationship with Law Title as it relates to the policy and the judgment.

¶ 46       We also find that there are questions of fact about whether plaintiff's claim is covered under the policy. As stated above, the policy states as follows:

> "[T]he Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> 1.  Title to the estate or interest described in Schedule A being vested other than as stated therein;
>
> 2.  Any defect in or lien or encumbrance on the title;
>
> 3.  Unmarketability of the title;

4. Lack of a right of access to and from the land."

According to plaintiff, his claim under the policy is based on damages he allegedly sustained from the tax liens that remained on the title to his property for two years after he purchased the policy. Specifically, plaintiff alleged in his third amended complaint that in December 2011, he made a claim to defendant under the policy for damages he sustained from title exceptions and lien encumbrances that prevented him from clear and unfettered ownership of his property. We note there is no dispute that the tax liens existed on plaintiff's property before the date of the policy and remained on the property for two years thereafter while Law Title contested the validity of the liens. Plaintiff argues that the court in the underlying litigation determined that, after having considered the evidence, plaintiff sustained damages as a direct and proximate result of cloud on the title to his property and the judgment order proves he sustained damages as a result of the cloud on the title that Law Title failed to timely abate. The judgment order states: "This matter coming to be heard for prove-up of damages on default judgment entered *** This court having heard evidence on damages orally and by affidavit, judgment is hereby entered in favor of [plaintiff] and against defendants [Law Title and Northstar]*** in the total amount of $1,622,851.70." As previously stated, summary judgment is a drastic measure that should only be granted if the movant's right to judgment is clear and free from doubt and when we review whether there exists a genuine issue of material fact, we must construe pleadings, depositions, and admissions on file strictly against the moving party and liberally in favor of the opponent. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Based on the record and applying this standard, there are questions of fact regarding whether plaintiff's alleged loss or damage was sustained or incurred by reason of the liens or defects on title to the property such that plaintiff's loss or damage is covered under the policy.

¶ 47 Defendant asserts that plaintiff's claim under the policy is based on the judgment order entered against third parties Law Title and Northstar in the underlying litigation and that the 2011 judgment order entered against third parties in another action after the policy was issued does not fall into the category of a covered risk under the policy. Plaintiff responds that he has never maintained that the judgment order constituted its own claim, but instead argues that the judgment against Law Title proved that he sustained damages a result of the cloud on title that Law Title failed to timely abate. The common law record contains the December 2011 demand letter from plaintiff's counsel to defendant, which states: "Please find enclosed judgment order entered in the amount of $1,622,851.70 arising out of breach of title insurance agreement and indemnity under insurance coverage" for the policy. However, plaintiff's third amended complaint does not refer to the judgment order and he alleged in his complaint that in December 2011, he made a claim to defendant under the policy for title insurance proceeds arising out of damages he sustained on title exceptions and lien encumbrances that prevented him from clear and unfettered ownership of his property. Applying the summary judgment standard, we find there are questions of fact regarding the basis for plaintiff's claim for damages, *i.e.,* whether it is based on loss or damage incurred by plaintiff by reason of the tax liens having been recorded on the title for two years after closing of the property or solely based on the 2011 judgment order entered in the underlying litigation.

¶ 48 Defendant also asserts that plaintiff submitted only a copy of the judgment order entered against third parties as the basis for his claim and that he provided no further documentation or information to defendant to support his claim before he filed this action. In the court's February 14, 2020, order, it granted defendant's motion for summary judgment on the basis that the claim fell outside the scope of the policy and did not address plaintiff's

performance or whether plaintiff supplied sufficient documentation to support his claim. However, in the court's August 15, 2018, ruling that granted plaintiff's motion to reconsider its initial ruling on defendant's motion for summary judgment, the court addressed defendant's argument that plaintiff failed in performing its obligations under the policy. The court noted that defendant denied plaintiff's claim because plaintiff failed to provide information requested by defendant as part of the claims process. However, the court found that under Section 5 of the policy, a claimant's failure to comply does not automatically result in a denial of coverage because the company's obligations to the insured shall terminate "if the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damages." The court found that defendant failed to establish that there were no questions of fact regarding whether defendant was prejudiced by plaintiff's failure to provide the required proof of loss or damages. The court stated that defendant did not present any evidence to establish whether and how it was prejudiced by plaintiff's failure to provide the requested information and it noted that the deposition testimony showed that the claim evaluation process allowed defendant to obtain the necessary information from Law Title. Thus, to the extent defendant is arguing that summary judgment is proper because plaintiff provided no further documentation to defendant other than the judgment to support his claim for damages under the policy, we are unpersuaded by defendant's argument.

¶ 49       Further, there are genuine issues of material fact regarding whether plaintiff's claim is excluded from coverage under the policy. Defendant argues that plaintiff's claim is excluded from coverage under section 3(d) of the Exclusions from Coverage section, which states that "[d]efects, liens, encumbrances, adverse claims or other matters *** attaching or created subsequent to Date of Policy" are expressly excluded. There is no dispute that the tax liens, or

defects on the title, existed before the date of the policy such that the exclusion does not apply to the tax liens because they were not created after the date of the policy. However, plaintiff's claim under the policy is based on damages he sustained from the tax liens, or defects, that arose before the date of the policy and remained on his property for more than two years after the date of the policy. We find there are questions of fact regarding whether the damages plaintiff allegedly sustained from the title defects are excluded under section 3(d) of the Exclusions from Coverage section in the policy. Specifically, there are questions of fact regarding whether plaintiff's damages are considered "adverse claims or other matters" and whether under the terms of the policy, the damages would be excluded from coverage under Section 3(d) if they were created after the date of the policy.

¶ 50　　　　Defendant asserts that plaintiff's claim was based on the judgment and that because the judgment against Law Title and Northstar was obtained in 2011, which was after the September 30, 2005, date of the policy, it is excluded from coverage under Section 3(d). However, as previously discussed, there are questions of fact about what damages plaintiff's claim is based upon, *i.e.,* the 2011 judgment order alone or the damages he sustained from the tax liens having been recorded on his property for two years after the date of the policy. Accordingly, there are questions of fact as to whether the damages plaintiff sustained from the tax liens are excluded from coverage under section 3(d) of the Exclusions from Coverage section in the policy.

¶ 51　　　　Defendant also argues that the tax liens did not constitute a covered risk under the policy because they were released after Law Title made its payment to the Village of Burnham in 2007. Condition 9(a) of the policy states:

"If the Company establishes the title, or removes the alleged defect, lien or encumbrance *** in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefore, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby."

However, plaintiff argues he sustained damages as a result of the tax liens that Law Title took more than two years to remove. He asserts that the judgment in the underlying litigation was entered against Law Title "for [its] conduct" in not paying the tax liens for two years and that plaintiff won the default judgment because it failed to clear the title in a timely manner. There are questions of fact regarding whether Law Title paid the liens in a reasonably diligent manner and, thus, whether defendant fully performed its obligations pursuant to Condition 9(a) of the policy.

¶ 52    There are questions of fact regarding the relationship between the parties as it relates to the policy and the judgment and whether plaintiff's claim is covered under the policy. There are also questions of fact regarding whether defendant breached the terms of the policy when it denied plaintiff's claim. Summary judgment in favor of defendant should not have been granted on plaintiff's breach of contract claim.

¶ 53                                    III. CONCLUSION

¶ 54    We reverse the circuit court's decision to grant defendant's motion for summary judgment and remand for further proceedings.

¶ 55    Reversed and remanded.